1:20-cv-519
# Exhibit A

**Neither this Note nor the securities into which it is convertible have been registered under the United States Securities Act of 1933 or under any securities laws of any State of the United States and they may not be offered for sale or sold, assigned or otherwise transferred in the absence of such registration, unless the Company receives written evidence reasonably satisfactory to the Company to the effect that the proposed offer, sale, assignment or other transfer may be effected without such registration.**

## NANO GLOBAL CORP.

## CONVERTIBLE PROMISSORY NOTE

$2,500,000                                                                      September 18, 2019

For value received, the undersigned, Nano Global Corp., a Delaware corporation (the "Company"), promises to pay to David and Angela Nazarian Family Trust (the "Holder") on the Maturity Date (as defined below), the principal amount of Two Million Five Hundred Thousand Dollars ($2,500,000) or such lesser principal amount as is then outstanding, plus interest at the rate of four and one-quarter percent (4.25%) per annum on the outstanding principal balance, upon and subject to the terms and conditions herein provided.

1.      **Repayment.** Subject to the provisions of Section 4, the then outstanding principal amount of this Note, together with all accrued and unpaid interest, shall be due and payable on the earlier of (i) December 31, 2019 ("Maturity Date"); (ii) the closing of a Qualified Financing as defined below; and (iii) the occurrence of an Event of Default as defined below; *provided, however* that if the Event of Default is cured as permitted in this Note, then the Maturity Date shall not thereafter be deemed to have occurred with regard to such Event of Default.

2.      **Interest.** Interest shall accrue on the unpaid principal balance of this Note at the aforesaid rate from the date of execution and shall be due and payable on the Maturity Date.

3.      **Events of Default.**

3.1      Events of Default Defined. The Company will be in default under this Note upon the occurrence of any of the events specified in this Section 3.1 (any of such events being an "Event of Default"):

(a)      Any payment required under this Note is not made promptly when due or the Company is in material breach of any covenant or obligation of the Company under this Note;

(b)      The Company (i) makes an assignment, or establishes a trust, for the benefit of creditors, (ii) petitions or applies for the appointment of a liquidator, receiver or the like, (iii) commences, acquiesces in, or consents to any proceeding relating to the Company under any bankruptcy, insolvency or similar law, or (iv) admits in writing its inability to pay its debts as they mature; or

1

(c)     An order for relief is entered in any bankruptcy proceeding relating to the Company or an order is entered (i) appointing a liquidator or receiver for the Company or a substantial part of any of its properties or (ii) adjudicating it bankrupt or insolvent and such order is not lifted within sixty days.

3.2     Remedies Upon Event of Default. Upon the occurrence of an Event of Default, the entire unpaid principal balance hereof will become immediately due and payable in cash, without presentment, demand, protest or notice. Any such acceleration of amounts due under this Note will not affect any other rights which the Holder may have at law, in equity or otherwise. All rights and remedies hereunder will be cumulative and in addition to those provided by law, and may be exercised separately, concurrently, or successively.

**4.     Conversion.**

4.1     Conversion Upon Closing of Qualified Financing. If immediately prior to the closing of the Qualified Financing (as defined below) this Note remains outstanding, all of the then outstanding principal amount and accrued interest of this Note shall, at such closing, be converted by the Holder, into the identical equity security issued at such Qualified Financing at a price equal to the per share purchase price of the Qualified Financing Securities (as defined below) at a pre-money valuation no greater than $150,000,000; The term "Qualified Financing" as used herein means one or a series of equity security financings for the account of the Company that result, in the aggregate, in at least fifteen million dollars ($15,000,000) in proceeds to the Company (net of fees and expenses, and not including the principal amount of and accrued interest on this Note and all other similar Notes issued by the Company on or about the date hereof).  The term "Qualified Financing Securities" as used herein means any equity security issued pursuant to such Qualified Financing. Upon conversion of this Note pursuant to this Section 4.1, the Holder hereby covenants and agrees that the Holder shall execute and become a party to the definitive agreements for the Qualified Financing Securities, including without limitation a stock purchase agreement, an investor rights agreement, and a right of first refusal and co-sale agreement.

4.2     No Fractional Shares. No fractional shares of the Qualified Financing Securities or of the Series 2 Preferred Stock will be issued upon conversion of this Note pursuant to this Section 4.  In lieu of the Company issuing any fractional shares to the Holder upon conversion, the Company will pay to the Holder in cash, the amount that would otherwise be converted into such fractional shares under this Section 4.

4.3     Delivery of Certificate Upon Conversion. As soon as reasonably practicable after the closing of a Qualified Financing after the conversion pursuant to Section 4.1, the Company shall deliver, or cause to be delivered, to the Holder a certificate or certificates representing the number of shares of the Qualified Financing Securities contemplated herein acquired upon conversion of this Note.

5.     **Representations and Warranties of Holder.**  Holder hereby represents and warrants to the Company as follows:

5.1     Restricted Securities. Holder understands that neither this Note nor the equity securities into which this Note is convertible (the "Conversion Shares") have been registered

under the Securities Act of 1933, as amended (the "Securities Act"). Holder also understands that the Note is being offered and sold pursuant to an exemption from registration contained in the Securities Act based in part upon Holder's representations herein.

5.2     Investment Experience; Economic Risk. Holder has substantial experience in evaluating and investing in private placement transactions of securities in companies in the development stage, and is capable of evaluating the merits and risks of its investment in the Company and has the capacity to protect its own interests. Holder must bear the economic risk of this investment indefinitely unless this Note (or the Conversion Shares) is or are registered pursuant to the Securities Act, or an exemption from registration is available. Holder understands that the Company has no present intention of registering this Note, the Conversion Shares or any of its equity securities. Holder also understands that there is no assurance that any exemption from registration under the Securities Act will be available and that, even if available, such exemption may not allow Holder to transfer all or any portion of this Note or the Conversion Shares under the circumstances, in the amounts or at the times Holder might propose.

5.3     Purchase Entirely for Own Account. Holder is acquiring this Note and the Conversion Shares for Holder's own account for investment only. This Note (including any Conversion Shares) has been purchased by the Holder for such Holder's own account, not as a nominee or agent, and not with a view to the resale or distribution of any part thereof, and such Holder has no present intention of selling, granting any participation in, or otherwise distributing the same. Such Holder does not have any contract, undertaking, agreement or arrangement with any person to sell, transfer, or grant participation to any person with respect to the Securities.

5.4     Capacity to Protect Own Interest. Holder represents that by reason of Holder's management, business or financial experience, Holder has the capacity to protect its own interests in connection with this Note and the transactions contemplated herein. Further, Holder is not aware of any publication of any advertisement in connection with the transactions contemplated by this Note.

5.5     Accredited Investor. Holder is an accredited investor within the meaning of Regulation D under the Securities Act.

5.6     Disclosure of Information.  Holder has had an opportunity to discuss the Company's business, management and financial affairs with directors, officers and management of the Company and has had the opportunity to review the Company's operations and facilities. Holder has also had the opportunity to ask questions of, and receive answers from, the Company and its management regarding the terms and conditions of this investment.

5.7     Rule 144 Stock. Holder acknowledges and agrees that this Note, and, if issued, the Conversion Shares, must be held indefinitely unless they are subsequently registered under the Securities Act or an exemption from such registration is available. Holder has been advised or is aware of the provisions of Rule 144 promulgated under the Securities Act as in effect from time to time, which permits limited resale of shares purchased in a private placement subject to the satisfaction of certain conditions, including, among other things: the availability of certain current public information about the Company, the resale occurring following the

3

required holding period under Rule 144 and the number of shares being sold during any three-month period not exceeding specified limitations.

5.8    Holder Address. If Holder is an individual, then the Holder resides in the state or province identified in the address of the Holder set forth on the signature page of this Note; if the Holder is a partnership, corporation, limited liability company or other entity, then the office or offices of the Holder in which its investment decision was made is located at the address or addresses of the Holder set forth on the signature page of this Note.

5.9    Non-U.S. Investors. If Holder is not a United States person (as defined by Section 7701(a)(30) of the Internal Revenue Code of 1986, as amended), Holder hereby represents that it has satisfied itself as to the full observance of the laws of its jurisdiction in connection with any invitation to subscribe for this Note, including (i) the legal requirements within its jurisdiction for the purchase of this Note, (ii) any foreign exchange restrictions applicable to such purchase, (iii) any government or other consents that may need to be obtained, and (iv) the income tax and other tax consequences, if any, that may be relevant to the purchase, holding, redemption, sale or transfer of this Note. Holder's acquisition and payment for and continued beneficial ownership of this Note will not violate any applicable securities or other laws of Holder's jurisdiction.

**6.    Prepayment.** The Company may not prepay this Note at any time without the prior written consent of the Holder, which consent the Holder may grant or withhold in its sole discretion.

**7.    Tax Matters.** The Company and the Holder hereby acknowledge and agree that, notwithstanding anything expressed or implied in this Note to the contrary, for United States federal and state income tax purposes this Note is intended to constitute equity and not debt. The Company and the Holder agree to treat this Note as equity and not as debt for all United States federal and state income tax purposes (including, without limitation, on their respective tax returns or other informational statements) and not to take any position inconsistent with such characterization. For the avoidance of doubt, the Company hereby agrees that, with regard specifically to the rule set forth in Section 385(c) of the Internal Revenue Code of 1986, as amended, the Company will treat this Note as equity and not as debt.

**8.    Miscellaneous.**

8.1    Nonwaiver. Delay or omission by the Holder to exercise any right or power or failure by the Holder to insist upon the strict performance of any of the covenants and agreements herein set forth or to exercise any rights or remedies hereunder will not impair any such right or power or be considered or taken as a waiver or relinquishment for the future of the right to insist upon and to enforce strict compliance by the Company with all of the covenants and agreements herein. Delay, omission or waiver on any one occasion will not be deemed a bar to or waiver of the same or any other right on any future occasion.

8.2    Successors and Assigns. Subject to Section 8.4 below, this Note is binding upon the Company and its legal representatives, successors and assigns, and will inure to the benefit of the Holder and its legal representatives, successors and assigns.

4

8.3     Amendment.  No modification or waiver of any provision of this Note, and no consent of the Holder to any departure therefrom by the Company, will be effective unless such modification, waiver or consent is in a writing signed by the Holder. Notwithstanding the foregoing, this Note or any of the terms hereof may be amended, modified or waived with the written approval or consent of the Company and the Holder.

8.4     Nonassignment.  The Holder shall not assign, pledge, or otherwise transfer any right, preference, privilege, or obligation under this Note without the prior written consent of the Company.

8.5     Registered Holder.  The Company may treat the last holder hereof of whom the Company has written notice, for the time being, as the original Holder hereof for the purpose of receiving payment of the principal, and the Company will not be affected by any other notice or knowledge to the contrary, whether payments on this Note are overdue or not.

8.6     Notices.  Any notice, request or other communication required or permitted hereunder must be in writing and will be deemed to have been duly given if emailed, personally delivered, or sent by certified mail or express courier at the respective addresses of the parties as set forth on the signature page hereof, or such other address as one party may give by written notice to the other party from time to time.  Any party hereto may by notice so given change its address for future notice hereunder. Notice will conclusively be deemed to have been given when received, if sent by email, or when personally delivered or delivered by certified mail or express courier in the manner set forth above.

8.7     Jurisdiction; Governing Law. The Company and the Holder hereby (i) submit to the exclusive jurisdiction of the courts of the State of Texas in Travis County and the United States Federal courts of the United States for the Western District of Texas for the purpose of any action or proceeding arising out of or relating to this Note and any other documents and instruments relating hereto, (ii) agree that all claims in respect of any such action or proceeding may be heard and determined in such courts, (iii) irrevocable waive (to the extent permitted by applicable law) any objection which it now or hereafter may have to the laying of venue of any such action or proceeding brought in any of the foregoing courts, and any objection on the ground that any such action or proceeding in any such court has been brought in an inconvenient forum and (iv) agree that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner permitted by law. This Note shall be governed by the law of the State of Delaware, without regard to choice of law principals.

8.8     Usury Savings. All agreements between the Company and the Holder, whether now existing or hereafter arising and whether written or oral, are expressly limited so that in no contingency or event whatsoever, whether by acceleration of the maturity of this Note or otherwise, shall the amount paid, or agreed to be paid, to Holder for the use, forbearance or detention of the money to be loaned under this Note or otherwise, exceed the maximum amount permissible under applicable law. If from any circumstances whatsoever fulfillment of any provision of this Note or of any other document evidencing, securing or pertaining to the indebtedness evidenced by this Note, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law, then ipso facto, the obligation to be fulfilled shall be reduced to the

5

limit of such validity, and if from any such circumstances Holder shall ever receive anything of value as interest or deemed interest by applicable law under this Note or any other document evidencing, securing or pertaining to the indebtedness evidenced by this Note or otherwise, an amount that would exceed the highest lawful rate, such amount that would be excessive interest shall be applied to the reduction of the principal amount owing under this Note or on account of any other indebtedness of the Company to Holder relating to this Note, and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of principal of this Note and such other indebtedness, such excess shall be refunded to the Company. In determining whether or not the interest paid or payable with respect to any indebtedness of the Company to Holder, under any specific contingency, exceeds the highest lawful rate, the Company and Holder shall, to the maximum extent permitted by applicable law, (i) characterize any non-principal payment as an expense, fee or premium rather than as interest; (ii) amortize, prorate, allocate and spread the total amount of interest throughout the full term of such indebtedness so that the actual rate of interest on account of such indebtedness is uniform throughout the term of such indebtedness; and/or (iii) allocate interest between portions of such indebtedness, to the end that no such portion shall bear interest at a rate greater than that permitted by law. The terms and provisions of this Section shall control and supersede every other conflicting provision of all agreements between the Company and Holder. The Holder has been advised by the Company to seek the advice of an attorney and an accountant in connection with the issuance of this Note. The Company has had the opportunity to seek the advice of any attorney and accountant of the Company's choice in connection with issuance of this Note.

8.9     <u>Counterparts</u>. This Note may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument.

8.10     <u>Entire Agreement</u>. This Note is the entire agreement between the parties hereto relating to the subject matter hereof and supersedes any prior arrangement or agreement, written or oral.

IN WITNESS WHEREOF, the Company has caused this Note to be duly executed and delivered as of the date first written above.

**NANO GLOBAL CORP.**

By: _____

Name: Steve Papermaster
Title: Chairman and CEO

The undersigned Holder hereby acknowledges and agrees to the provisions herein:

**DAVID AND ANGELA NAZARIAN FAMILY TRUST**

By: _____

Name: _____ David Nazarian _____

Title: _____ Trustee _____

Addresses for Notice Purposes:

Nano Global Corp.
Attention: Investor Relations
1705 Guadalupe, 4th Floor
Austin, Texas 78701

Holder:

1801 Century Park West, 5th Floor
Los Angeles, CA 90067

Email: _David@nimescapital.com_

[Signature Page to Nano Global Corp Convertible Promissory Note]

7

# **Wire Transfer Instructions**

Credit to: Nano Global Corp.
Account No: 591679732
ABA No: 114000093
SWIFT Code: FRSTUS44

Frost Bank
2735 Austin Hwy,
San Antonio, Texas 78218

Beneficiary Address:

1705 Guadalupe, 4th Floor
Austin, Texas 78701
USA